# KOGA

| 1. AGENTS - SHIPBROKERS<br><br>COLFLETAR<br>CALLE 82, NO. 11 – 37, SUITYES 618 & 619<br>BOGOTA COLOMBIA<br>CHARTERING@COLFLETAR.COM.CO | |
|---|---|
| 2. PLACE, DATE:<br>HOUSTON, TEXAS<br>11/04/2022 | BOOKING NUMBER:<br>151 |

| 3. CARRIER<br><br>KING OCEAN SERVICES LTD<br>11000 NW 29TH ST STE 201<br>MIAMI, FL 33172 | 4. MERCHANT (SEE CLAUSE 1)<br><br>COLFLETAR<br>CALLE 82, NO. 11 – 37, SUITYES 618 & 619<br>BOGOTA COLOMBIA<br>CHARTERING@COLFLETAR.COM.CO |
|---|---|
| 5. VESSEL'S NAME<br><br>NOMADIC MILDE / SUB – V2255 | 6. TIME FOR SHIPMENT (ABOUT)<br><br>LC NOV 05/07 |
| 7. LOAD PORT(S)<br><br>HOUSTON, TEXAS – GREENSPORT TERMINAL | 8. DISCHARGE PORT(S)<br><br>ALTAMIRA – MERCHANT'S BERTH |

**9. DESCRIPTION OF GOODS**

FIBERGLASS PIPE PLUS DUNNAGE
114 BUNDLES – 5252 CBM / 961 MT

| 10. FREIGHT RATE<br><br>650,000 USD LS<br>LINER TERMS / HOOK TO HOOK | 11. DEMURRAGE/DETENTION RATE<br><br>17,500 USD PDPR – HALF DESPATCH |
|---|---|

**12. MERCHANT'S REPRESENTATIVES AT LOADING PORT (STATE FULL NAME AND ADDRESS, TELEGRAPHIC ADDRESS, TELEPHONE, AND TELEX)**

**13. SPECIAL TERMS, IF AGREE**

11 DAYS TTL SHINC FOR LOADING/DISCHARGE AND FUMIGATION
EXCLUDES TIME FOR REHANDLING IN MEXICO AND RESTAMPING IF REQUIRED
ANY STEVEDORE COST FOR REHANDLING CARGO IN MEXICO TO BE FOR MERCHANT'S ACCT
ANY SUITS, GEAR, DETECTORS, MASKS OR ADDITIONAL SAFETY EQUIPMENT REQUIRED BY VESSEL AND NOT ONBOARD TO BE SUPPLIED BY MERCHANT AT THEIR OWN TIME AND EXPENSE

It is hereby agreed that this Contract shall be performed subject to the terms contained on Page 1 and 2 hereof which shall prevail over any previous arrangements, and which shall in turn be superseded (except as to dead freight and demurrage) by the terms of the Bill of Lading, the terms of which (in full or in exact) are found on the reverse side hereof.

| SIGNATURE (CARRIER)<br><br><br>FOR AND ON BEHALF OF THE CARRIER – AS AGENTS ONLY - | SIGNATURE (MERCHANT) |
|---|---|

EXHIBIT 1

RECEIVED in apparent good order and condition from Merchant, or Merchant's agent, number of Containers or other packages or units said by shipper to contain the Goods described in the "Particulars Furnished By Shipper", to be transported from the initial port of loading or, if applicable, the final port of loading to the port of discharge, or if applicable, the place of delivery by on-carrier, there to be delivered to consignee named on reverse or on-carrier upon payment of all charges due thereon. Carrier designated on the front of this bill of lading makes no representation as to the correctness of the particulars furnished by shipper. In accepting this bill of lading, whether or not signed by Merchant, Merchant expressly accepts and agrees that the receipt, custody, carriage, delivery and any transshipping of the Goods are subject to the terms appearing on the face and back hereof, which shall govern the relations between Merchant and Carrier, it's agents, contractors, employees, master and Vessel in every contingency occurring and whether Carrier be acting as such or as bailee. The terms hereof shall not be deemed waived by Carrier except by written waiver signed by Carrier or its duly authorized agent.

1. DEFINITIONS "Carrier" means King Ocean Services Limited, Inc. on whose behalf this bill of lading has been issued. "Container" includes any container (including an open top container), flat rack, platform, trailer, transportable tank, pallet or any other similar article used to consolidate the Goods and includes any connected equipment. "Freight" includes all charges payable to the Carrier in accordance with the applicable tariff and/or service contract and this bill of lading. "Goods" means the whole or any part of the cargo described on the face of this bill of lading and any packaging accepted from the shipper and includes any Container not supplied by or on behalf of the Carrier. "Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August 1924 and includes the amendments by the Protocol signed at Brussels on 23rd February 1968, but only if such amendments are compulsorily applicable to this bill of lading. (It is expressly provided that nothing in this bill of lading shall be construed as contractually applying the said Rules as amended by said Protocol). "Merchant" includes the shipper, holder of this bill of lading, consignee, receiver of the Goods, any person owning or entitled to the possession of the Goods or of this bill of lading. "Vessel" means the ocean vessel named on the reverse hereof and includes any vessel, ship, craft, lighter or other means of transport by ocean or water which is or shall be substituted, in whole or in part, for the vessel named on the reverse hereof.

2. CARRIER'S TARIFF. The terms and conditions of Carrier's applicable tariff are incorporated herein. Copies of the relevant provisions of the applicable tariff are obtainable from Carrier upon request. In the case of inconsistency between this bill of lading and the applicable tariff, this bill of lading shall prevail.

3. CLAUSE PARAMOUNT. This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of 1936 of the United States of America, as amended ("COGSA"), which shall apply to the Goods whether carried on or under deck, to carriage of the Goods to, from or between U.S. ports, or between non-U.S. ports, before the Goods are loaded on and after they are discharged from the vessel, and throughout the entire time the Goods are in custody of Carrier, whether acting as carrier, bailee, terminal operator, inland carrier, stevedore . Carrier shall be entitled to any and all defenses and limitations on liability provided under COGSA and any other compulsorily applicable law for any and all claims arising out of Carrier's custody or control of the Goods. Carrier shall also be entitled to any and all defenses and limitations provided in Carrier's contracts with underlying water and land carriers and all such limitations and defenses are incorporated herein by reference. In addition to the foregoing, Carrier shall not be liable for loss of or damage to Goods resulting from hijacking or piracy. If this bill of lading is issued in or the Goods are delivered to a locality where there is in force compulsorily applicable legislation similar to the "Hague Rules", then this bill of lading shall have effect subject to the provisions of such legislation to the extent compulsorily applicable. COGSA or the Hague Rules shall be deemed to be incorporated herein. If any term of this bill of lading is held to be repugnant to COGSA, the Hague Rules or any other law, statute or regulation, then such term only shall be null and void to the extent of such repugnance but no further. This bill of lading shall be construed, and the rights of the parties hereunder determined according to the laws of the United States.

4. PARTIES COVERED. If the Vessel is not owned by or chartered by demise to Carrier this bill of lading shall take effect, for purposes of limitation of liability only, as a contract either with the owner or demise charterer. If it shall be adjudged that any person other than the owner or demise charterer (including the master, time charterer, agents, stevedores, lashers, terminals and other independent contractors, including inland carriers) is the carrier or bailee of the Goods, or is otherwise liable in contract or in tort, all rights, exemptions, and limitations of liability provided by law and by the terms of this bill of lading shall be available to such other persons.

5. SCOPE OF CARRIAGE. (1) Carrier may at any time and without notice to Merchant: (a) use any means of carriage or storage whatsoever, including railway, road vehicle or inland waterway services; (b) substitute or employ a vessel, watercraft, vehicle or other means rather than the Vessel named herein to perform all or part of the carriage; (c) proceed via any route at any speed, in or out of the route or in a contrary direction beyond the port of discharge, omit calling at any port or ports whether scheduled or not, and may call at the same port more than once; may before or after proceeding to the port of discharge, make trial trips or tests, make repairs or take fuel or stores at any port in or out of the regular course of the 3 voyage, sail with or without pilots, tow and be towed, and save or attempt to save life, vessels in distress or other property; and all of the foregoing are included in the contract voyage; (d) load, unload and store the Goods at any port or place (whether or not any such port or place is named herein as the Port of Loading or Port of Discharge); (e) comply with any orders, directions, requests, or suggestions given by any government or authority or Carrier's insurance company; (f) Anything done or not done in accordance with sub-clause 5(1) or any delay arising therefrom shall be deemed to be within the contractual carriage and shall not be a deviation; (3) Unless otherwise specified on the face of this bill of lading, Carrier does not guarantee the arrival date; (4) Carrier shall be entitled to sub-contract on any terms the whole or any part of the carriage, loading, unloading, storing, warehousing, handling, and any or all duties whatsoever undertaken by Carrier in relation to the Goods.

6. MATTERS AFFECTING PERFORMANCE. In any situation which, in the judgment of Carrier or the master, is likely to give rise to risk of seizure, arrest, detention, damage, delay to, or loss, of any Goods, the Vessel, crew or Carrier or to make it imprudent or unlawful for any other reason to receive, keep or load the Goods, or continue the voyage, or discharge the Goods, Carrier or the master shall have the right, without prior notice to Merchant, (a) to decline to receive, keep or load the Goods or to discharge or devan them at any convenient port or place and to require Merchant to take delivery and if he fails to do so, to store them at the risk and expense of the Goods; (b) to discharge or devan the Goods into any lighter, craft, depot or other place; (c) to retain the Goods on board until the return trip or until such time as Carrier or the master deems advisable; or (d) to substitute another vessel or to transship or forward the Goods, or any part thereof, by any means of transport, but always at the risk and expense of the Goods. Any disposition of the Goods pursuant to this clause shall constitute complete performance of this contract by Carrier who shall be free of further responsibility. For all service rendered as herein provided, Carrier shall be entitled to reasonable extra compensation and shall have a lien on the Goods. Goods shut out or not loaded in a vessel for any reason may be forwarded on a subsequent vessel or by feeder ships, lighters, aircraft, trucks, trains or other means in addition to the ocean vessel, or its substitute, to accomplish the carriage herein.

7. PACKING OF CONTAINERS-SHIPPER'S GUARANTY-INDEMNITY. (1) If a Container has not been stuffed by or on behalf of Carrier, this bill of lading shall be a receipt for the Container(s) only and Carrier shall not be liable for loss of or damage to the 4 contents thereof and Merchant shall indemnify Carrier against any injury, loss, damage, liability or expense incurred by Carrier if such exigency has been caused by: (a) the manner in which the Container has been packed or loaded; (b) the unsuitability of the Goods for carriage in Containers; or (c) the unsuitability or defective condition of the Container which would have been apparent upon reasonable inspection by Merchant at or prior to the time the Container was packed or loaded. (2) Merchant shall inspect Containers before stuffing them and the Merchant's packing or loading of the Containers shall be prima facie evidence of their being sound and suitable for use. (3) Where Container(s) is stuffed by Merchant or on his behalf, and the Container is sealed when received by Carrier for shipment, Carrier's liability will be limited to U.S. $500 with respect to the contents of each package, except when Merchant declares the value on the face hereof and pays additional charges on such declared value as per Carrier's tariff. (4) When Container(s) is stuffed by Merchant or his agent, Carrier shall not be responsible for count, weight or measurement of the contents, nor for concealed damage, and the consignee or holder hereof agree that upon delivery, Carrier will be given a receipt for the Container(s) before the shipment is released.

8. PERISHABLE GOODS. Goods of a perishable nature are carried in dry Containers without environmental or atmospheric control or other special services unless the face of this bill of lading notes that the Goods are to be carried in a refrigerated, heated, specially ventilated or otherwise specially equipped Container. This carriage is subject to the special services and charges offered in Carrier's tariff. Merchant is responsible for bringing the Goods to the proper temperature before loading the Goods into the Containers, for the proper stowage of the Goods within the Container, for setting the temperature (including maintenance and repair), during all times before Containers are delivered to Carrier and after they are delivered by Carrier. Carrier is not responsible for product deterioration caused by inherent vice, defects in the merchandise or transit times in excess of the product's shelf life. Refrigerated, heated, specially ventilated or otherwise specially equipped Containers are not equipped to change the temperature of the Goods. (They are equipped only to maintain temperature.) Merchant will give written notice of requested temperature setting of the thermostatic controls before receipt of the Goods by Carrier. When a container is received, Carrier will verify that the thermostatic controls are set to maintain container temperature as requested. Carrier is unable to determine whether the Goods were at the proper temperature when they were loaded into the container or when the container is delivered to Carrier. If temperature at the unit sensor is maintained within a range of plus or minus 5 degrees Fahrenheit of the temperature requested by the Merchant on the face of this bill of lading, and if the Goods were at that temperature when loaded into the container and if the temperature controls were properly set when the container was loaded, Carrier is not responsible for temperature fluctuations that do not exceed 4 hours duration. 5 [Carrier shall not be liable for any loss or damage to the Goods arising from latent defects, derangement, breakdown, defrosting, stoppage of the refrigerating, ventilating or any other specialized machinery, insulation and/or apparatus of the Container, ]

9. DANGEROUS GOODS. (1) No Goods which are or may become dangerous, inflammable or damaging (including radioactive materials), shall be tendered to Carrier without its express consent in writing, and without the Container as well as the Goods themselves being distinctly marked to indicate the nature and character of any such Goods and so as to comply with all applicable laws, regulations or requirements. If any such Goods are delivered to Carrier without such written consent and/or marking, or if in the opinion of Carrier the Goods are or are likely to become in any way dangerous, inflammable or damaging, they may at any time be destroyed, disposed of, abandoned, or rendered harmless without compensation to Merchant. (2) Merchant warrants that the Goods are sufficiently packed in compliance with all laws or regulations or requirements with regard to the nature of the Goods. (3) Whether or not Merchant was aware of the nature of the Goods, Merchant shall indemnify Carrier against all claims, losses, damages or expenses arising in consequence of the Carriage of such Goods. (4) Nothing contained in this clause shall deprive Carrier of any of its rights provided for elsewhere.
10. LIVE ANIMALS. Live animals, birds, and fish are received, kept and carried solely at Merchant's risk of accident, disease or mortality and without warranty or undertaking whatsoever by Carrier. Merchant shall indemnify Carrier against any claim, loss, damage or expense related to or arising from the carriage of live animals. 11. STOWAGE OF GOODS. (1) The Goods may be stored by Carrier in Containers or similar articles of transport used to consolidate goods. (2) Goods, whether stowed in Containers or not, may be carried on deck or under deck without notice to Merchant unless Merchant specifically stipulated on the face hereof that the Containers or Goods will be carried under deck, but if carried on deck, Carrier shall not be required to note or stamp on the bill of lading any statement of such on deck carriage. Such Goods (other than livestock) whether carried on deck or under deck and whether marked as deck carriage shall be deemed to be within the definition of goods for the purpose of COGSA.

12. TRANSSHIPMENT. If the Goods are destined for a port or destination not served by Carrier or other carriers serving through routes, then the Goods will be transshipped or forwarded at the port of discharge served by Carrier's vessel(s) or other mode of transport. In 6 such case Carrier or participating carriers will have no further duty or responsibility whatsoever as Carrier, this bill of lading operating only as a document of title thereafter.

13. NOTIFICATION, DELIVERY AND STORAGE. (1) Any mention on the face hereof of parties to be notified of the arrival of the Goods is solely for information of Carrier, and failure to provide such notification shall not result in any liability nor relieve Merchant of any obligation hereunder. (2) Merchant shall take delivery of the Goods as provided for in Carrier's applicable tariff. (3) If Merchant fails to take delivery of the Goods or part of them in accordance with this bill of lading, Carrier may without notice stow and/or unstow, or store the Goods or that part thereof ashore, afloat, in the open or under cover. Such storage shall constitute due delivery hereunder, and all liability of Carrier in respect of the Goods shall cease. (4) Merchant's attention is drawn to the stipulations concerning free storage time and demurrage contained in Carrier's applicable tariff, which is incorporated in this bill of lading. (5) Carrier may in its absolute discretion receive the Goods as full-container-load and deliver them as less than full-container-load and/or as break bulk cargo and/or delivery the Goods to more than one receiver. In such event Carrier shall not be liable for any shortage, loss, damage or discrepancies of the Goods, which are found upon unpacking the container. (6) If the Goods are unclaimed after a reasonable period of time, or whenever, in Carrier's opinion, the Goods will become deteriorated or worthless, Carrier may, at its discretion and subject to its lien without any responsibility attaching to it, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant. (7) Except at ports where Carrier delivers Goods directly to the consignee, delivery shall take place and Carrier shall have no further responsibility when the Goods are landed upon a safe dock, lighter, or other craft and custody is taken by port, government authority, terminal operator or lighterman.

14. EXPENSES, FINES. Merchant shall be liable for, and shall indemnify Carrier and vessel and hold them harmless against, and Carrier shall have a lien on the Goods for all expenses and charges of mending, coopering, repairing, fumigating, cleaning, disposing, devanning, restowing, storing or reconditioning, and all expensed incurred for the benefit or protection of the Goods, as well as for any payment, duty, fine or other expenses including but not limited to court costs, expenses, and reasonable attorney's fees incurred or levied upon Carrier or the vessel in connection with the Goods because of Merchant's failure to comply with any laws or regulations.

15. FREIGHT, LIENS, QUANTITY. Freight and other charges shall be payable as set forth in Carrier's tariff or service contract. Carrier shall have the right, but not the duty, to open packages or containers and, if Merchant's particulars are found to be erroneous, the Merchant and the Goods shall be liable for the correct freight charge and any expenses incurred in examining, weighing, measuring or valuing the Goods. 7 Full freights to destination and other monies due hereunder, shall be considered completely earned on receipt of the Goods by Carrier, even though the Vessel or Goods are damaged or lost or the voyage is frustrated or abandoned, or whether freight is to be prepaid or collected at destination. All sums to be payable to Carrier are due when incurred and shall be paid without offset or deduction, in full, in Unites States currency, or, at Carrier's option, in its equivalent in the currency of the port of loading or the port of discharge, or as specified in applicable tariffs. Merchant shall be jointly and severally liable to Carrier for the performance of the obligations hereunder, including payment of all freight, demurrage, General Average and other charges, including but not limited to court costs, expenses and reasonable attorney's fees incurred in collecting sums due Carrier. Payment of ocean freight and charges to a freight forwarder, broker or anyone other than Carrier or its authorized agent, shall not be deemed payment to Carrier and shall be made a payor's sole risk. Carrier shall have a lien on the Goods for all sums payable to Carrier and for General Average contributions with respect to the Goods as well as Goods previously transported and delivered by Carrier and may, without notice, enforce this lien by public or private sale of the Goods and other property belonging to Merchant which may be in Carrier's possession. The lien shall survive delivery of the Goods.

16. BOTH TO BLAME COLLISIONS. If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the master, mariner, pilots or of the servants of Carrier in the navigation or in the management of the Vessel, the owners of the Goods carried hereunder will indemnify Carrier against all loss or liability of the non-carrying vessel or her owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said Goods, paid or payable by the non carrying vessel or her owners to the owners of said Goods and set-off, recouped, or recovered by the non-carrying vessel or her owners as part of their claim against the carrying Vessel or Carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel object other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision, contact, stranding or other accident.

17. GENERAL AVERAGE. General Average shall be adjusted, stated and settled according to York Antwerp Rules 1974, except Rule XXII thereof, at the place selected by the Carrier, and as to matters not provided for by these Rules, according to the laws and usage at the port of New York. Average agreement or bond and such additional security as may be required by Carrier, must be furnished before delivery of the Goods. If Carrier delivers the Goods without obtaining security for General Average contributions, Merchant by taking delivery of the Goods, undertakes personal responsibility to pay such contributions and to provide a cash deposit or other security for the estimated amount of such contributions as Carrier shall reasonably require. 8 In the event of an accident, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, Carrier is not responsible, by statute, contract or otherwise, the Goods and Merchant shall contribute with Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of goods. If a salvaging vessel is owned or operated by Carrier, salvage shall be paid for as fully and in the same manner as if the salvaging vessel belonged to strangers. Merchant shall pay its contribution to General Average even when such average is the result of fault, neglect or error of the master, pilot or crew. Merchant expressly renounces all codes, statutes, laws or regulations which might otherwise apply. Such deposit as Carrier or his agents may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon shall, if required, be made by the Goods and Merchant before delivery.

18. FIRE. Carrier shall not be liable for any loss or damage to Goods occurring at any time, even though before loading on or after discharge from the vessel, by reasons or by means of any fire whatsoever, unless such fire shall be caused by the actual fault of the Carrier.
19. LIABILITY AND VALUATION. The Carrier's maximum liability in respect to the Goods shall not exceed US $500 per package or, where the Goods are not shipped in packages, US $500 per customary freight unit unless the nature and higher value of the Goods have been declared by the Merchant herein and said Merchant shall have paid the applicable freight rate set forth in Carrier's Tariff. However, Carrier's liability in no event exceed the invoice value of the Goods. The word "package" shall include a container skid, cradle, pallet or unitized load, group or assemblage. When COGSA does not apply on its own force, the $500.00 limitation shall apply to each shipping customary freight unit or piece, provided always that any compulsorily applicable limitation which is greater than the $500.00 limitation shall apply in place of the $500.00 limitation.

20. NOTICE OF CLAIM — TIME FOR SUIT — JURISDICTION. Unless notice and the general nature of loss or damage be given in writing to Carrier or his agent at the port of discharge before or at the time of the removal of the Goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be the prima facie evidence of the delivery by Carrier of the Goods as described in the bill of lading. If the loss or damage is not apparent the notice must be given within three days after delivery. In any event, the Carrier shall be discharged from any liability unless suit is brought within one year after delivery of Goods, or the date when the Goods should have been delivered. Such shall not be deemed brought until jurisdiction shall have been obtained over Carrier and/or the vessel by service of process.

21. FINAL AGREEMENT. All prior agreements, dock receipts or freight engagements for the shipment of the Goods and all other arrangements are superseded by this bill of lading and Carrier's tariff rules and regulations which are incorporated herein by reference. Copies of Carrier's tariffs are available upon request.

22. SHIPPER'S WARRANTIES. Merchant warrants that he is the owner of and entitled to possession of the Goods or has the authority of the owner and all persons entitled to possession of the Goods to agree to the terms hereof. Merchant warrants to Carrier that the particulars relating to the Goods as set out overleaf have been checked by Merchant on receipt of this Bill of Lading and that such particulars and any other particulars furnished by or on behalf of Merchant are correct. Merchant shall indemnify Carrier against all loss, damage or expense resulting from inaccuracies or inadequacy of such particulars.

23. THROUGH AND ON BOARD BILLS OF LADING. When used in or endorsed on this bill of lading the words "ON BOARD" shall mean on board the exporting vessel or on board another mode of transportation operated by or on behalf of the originating carrier and enroute to the port of loading for loading aboard the participating carrier's vessel. In the case of through transport, where Carrier has arranged for inland carriage, all limitations and defenses set forth in COGSA shall govern before the Goods are loaded on and after they are discharged from the Vessel, including during portions of inland carriage. In the event the participating inland carrier's bill of lading together with its rules, tariffs and classifications, and compulsorily applicable laws, shall govern and control the possession and carriage of the Goods by such participating carrier, Carrier, in addition to any rights, defenses, and limitations available under COGSA, shall be entitled to all rights, liens, limitations of liability and rights of indemnity to the full extent permitted to participating carrier under its bill of lading, tariffs, regulations and or any laws relating to carriers, provided that nothing hereunder shall be deemed a waiver of any rights for indemnity or otherwise by Carrier against any participating land or other carrier. Without prejudice to the foregoing, every participating inland carrier shall be entitled to any and all defenses and limitations provided herein for the benefit of the Carrier, as if such provisions were expressly for its benefit.

24. CLAIMS. Claims for loss of or damage to the Goods may be filed against Carrier which agrees to be solely responsible for processing said claims to conclusion. It is agreed that in the event of payment of any such claims by Carrier it shall be automatically subrogated to all rights of Merchant against all others, including participating carriers on account of such loss or damage. Claims must be filed and suit commenced within the time limits provided by law and the terms of the bill of lading and tariff of the carrier which had or is deemed in accordance with this paragraph to have had custody of the Goods when loss or damage occurred. When the loss or damage occurs during the custody or control but it cannot be established which carrier 10 hereunder had custody or control of the Goods at the time of loss or damage it shall be deemed as between Merchant and Carrier hereunder, that the loss or damage occurred aboard the vessel while in custody or control of Carrier.

25. LAW AND JURISDICTION. This bill of lading shall be governed by United States law except as may be otherwise provided for herein. Unless otherwise agreed, any action against Carrier hereunder must be brought exclusively in the United States Federal Court for the Southern District of Florida. Any action by Carrier to enforce any provision herein may be brought before any court of competent jurisdiction at the option of Carrier.

EXHIBIT 1

**Additional Clauses to the Carrier Booking Note**

- Clause 20 - At Loading port(s) –
(a) In case of loading at Merchants berth or anchorage, same to be a 1 good safe berth or anchorage always afloat always accessible, or so near thereto as the vessel may safely get and lie always afloat.
(b) All time lost whatsoever waiting for berth and/ or port due to berth and/ or port congestion or swells, to count as damages for detention at the stipulated detention rate as per box 11.
(c) The cargo is to be loaded basis 'Liner in under hook', free of expense to the Merchant, however, shore side stevedoring, including hooking on expenses, is for Merchants time, expense & responsibility.
(d) The cargo is to be brought alongside the Vessel and within the reach of the Vessel's gear and in the sequence required by the Master or the
Carrier's Port Captain.
(e) The cargo is to be lashed and secured as per the Master's or the Carrier's Port Captain requirements at merchants time and expense.  Any additional lashing or securing required by the Merchant and/or their representatives is to be for the Merchants time and expense.
(f) In addition to detention charges resulting from waiting time/swell, the Merchants are also to be responsible for any additional stevedoring/Port Captain fees incurred from standby time, as well as additional expenses, including additional port expenses, additional lashing, securing, dunnaging and/or welding expenses, resulting from:
1) The Merchants inability to deliver the cargo in the sequence required by the Master or the Carrier's Port Captain.
2) The Merchants inability to tender the cargo under the Vessels gear as fast as the Vessel can load.
3) The Merchants misdescription of the cargo, including lifting points and center of gravity.

- Clause 21 - At Discharging port(s) -
(a) In case of discharging at Merchants berth or anchorage, same to be a 1 good safe berth or anchorage always afloat always accessible, or so near thereto as the Vessel may safely get and lie always afloat.
(b) All time lost whatsoever waiting for berth and/ or port due to berth and/ or port congestion or swells, to count as damages for detention at the stipulated detention rate as per box 11.
(c) The cargo is to be discharged basis 'Liner out under hook', free of expense to the Merchant, however, shore side stevedoring, including hooking off expenses, is for Merchants time, expense & responsibility.
(d) The cargo is to be unlashed at the Carrier's time and to be received alongside the vessel under reach of the Vessels gear and in the sequence dictated by the Master or Carrier's Port Captain.
(e) In addition to detention charges resulting from waiting time/swell, the Merchants are also to be responsible for any additional stevedoring/Port
Captain fees incurred from standby time, as well as additional port expenses, resulting from:
1) The Merchants inability to receive the cargo in the sequence required by the Master or the Carrier's Port Captain.
2) The Merchants inability to receive the cargo under the Vessels gear as fast as the Vessel can discharge.

- Clause 22 - Accommodation & Lifting of Cargo -
(a) Any damage resulting, including any time lost thereby, from Merchants failure to provide adequate lifting, lashing, securing points and center of gravity, to be for Merchants time, expense & responsibility. Furthermore, Merchant shall be liable for any damage, including any personal injuries to the Vessel, her servants and/or equipment, caused by their failure to provide the proper information.
(b) Any specially required spreader bars, wires, lifting frames, beams, slings, cradles, saddles not already onboard the vessel shall be supplied at Merchant's time, expense & responsibility. Since the Vessel is not equipped with dehumidifiers and only has natural/electrical ventilation, the cargo is to be suitably packed for transportation and Carriers are not liable for any corrosion and/or discoloration occurring from condensation.

- Clause 23 - Double Banking Clause -
1. The Merchants have the right to order the Owners and/or the Carriers to conduct ship to ship or ship to barge/barge to ship cargo operations at any safe port or place in accordance with the latest OCIMF guidelines. The Owners and/or the Carriers warrant that the Vessel is capable of carrying out such operations.
2. The other vessel(s) and/or barge(s) involved in such operations shall be acceptable to the Owners and/or the Carriers and the Merchants warrant that the other vessel(s) and/or barge(s) shall be in all respects seaworthy and capable of carrying out such operations. The Merchants shall obtain any necessary permission to perform such operations from the relevant authorities.
3. Merchants shall arrange and pay for adequate fendering, securing and mooring equipment, any other equipment necessary for such operations, and any additional personnel, including mooring master if requested by the Master. Charterers shall reimburse Owners for any additional insurance premiums payable in respect of such operations.
4. If, at any stage before or during such operations, the Master considers such operations to be unsafe for any reason, including the adequacy of the fendering, weather and/or sea conditions, the condition of any other vessel(s) and/or barge(s) involved and the competence of its crew, he may refuse or order immediate cessation of same.
5. The Merchants agree to indemnify the Owners and/or the Carriers in respect of any liabilities, losses or costs, arising out of or related to such operations or their suspension.
6. Notwithstanding any other provision in this charter party, all time from the arrival of the Vessel at the location of such operation(s) until the Vessel is ready to proceed on her voyage shall count as lay time or time on detention/demurrage, without any exceptions to apply. Any time relating to the procurement or return of equipment or personnel required under sub-clause 3 will be compensated at the detention/demurrage rate. The cost of bunkers consumed while time is running under this sub-clause 6 shall be for the Merchants account.

- Clause 24 - ISPS Clause -
(A)          (i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).
(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.
(B)          (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and any other information the Owners require to comply with the ISPS Code.
(ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account and any delay caused by such failure shall be compensated at the demurrage rate.
(C)          Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:
(i)Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code. (ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on lay time or demurrage. If the delay occurs before lay time has started or after lay time or time on demurrage has ceased to count, it shall be compensated by the Charterers at the demurrage rate.
(D)          Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.
(E)          If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

EXHIBIT 1

- Clause 25 - Stoppage of Canals and waterways Clause 1968 (Code Name: CONWAY) -
A. If at any time before loading is completed or the vessel sails from the loading port, it appears that the vessel would be delayed for not less than
3 days by circumstances beyond the Owners' control in proceeding through any waterway, natural or artificial, including the Panama Canal and the Suez Canal, which it was intended at the time this contract was made that the vessel should transit in the course of the voyage prescribed herein, the Owners may require the Charterers to declare that the voyage shall be performed by such suitable alternative route as the Master may select and that the freight shall be increased proportionately to the consequent increase in the mileage of the voyage. If the Charterers decline or fail to declare as aforesaid within 24 hours of receiving the Owner's notice, or if there is no alternative suitable route, the Owner may thereupon cancel the contract and, if any cargo has been loaded, thereupon discharge the same at the Charterers expense.
B. If delay as aforesaid become apparent after the vessel leaves the port of loading, the Owners may require the Charterers to make the declaration described in "A" above and if the Charterers decline or fail to declare as aforesaid within 24 hours of receiving the Owners' notice, or if there is no alternative suitable route, the Owners may instruct the Master to discharge the cargo at the nearest safe and reachable port and such discharge shall be deemed due fulfillment of this contract. Save that if the mileage of the voyage is thereby decreased the freight shall be decreased proportionately, all provisions regarding freight, discharge of the cargo, lay time and demurrage as agreed for the original discharging port shall apply to discharge a the substitute port.
C. The Owners shall have a lien on the cargo for any freight and discharging costs payable by the Charterers according to this Clause.

- Clause 26 - War Risk Clause -
(1) For the purpose of this Clause, the words:
(a) "Owners" shall include the Ship Owners, Bareboat Charterers, Disponent Owners, managers or other Operators who are responsible for the management of the Vessel, and the Master; and
(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.
(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners,
performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract or Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging and may only cancel this contract of carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement. (3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of
the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or
other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.
(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.
(5) The Vessel shall have liberty:-
(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or anybody or group acting with the power to compel compliance with their orders or directions;
(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give such orders,
directions or recommendations under the terms of the war risks insurance;
(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;
(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a carrier of
contraband;
(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;
(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.
(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.
(7A) The Owners may effect war risk insurance in respect of the Hull and Machinery of the vessel and their other interest (including but not limited to, loss of earnings and detention, the crew and their protection and indemnity risks), and the premiums and/or calls therefore shall be for their account.
(7B) If the underwriters of such insurance should require payment of premiums and/or calls because the vessel is within or is due to enter and
remain within an area or areas which are specified by such underwriters as being subject to additional premiums because of war risks then such premiums and/or calls shall be reimbursed by the Charterers.
(7C) If the Owners become liable under the terms of employment to pay the crew, bonus or Additional wages in respect of sailing into or being in an area which is dangerous in the manner defined by the said terms then such bonus or additional wages shall be reimbursed to the Owners by the Charterers.

- Clause 27 - Cancellation Clause -
Notwithstanding anything else provided herein, the Merchants shall have the right to terminate this contract prior to the vessels arrival at the first loading port against payment of a termination Fee as per following scale:
-Termination of booking up to 4 weeks prior commencement of laycan: 50% of full freight payable into Carrier's bank account.
-Termination of booking between 3-2 weeks prior commencement of laycan: 75% of full freight payable into Carrier's bank account.
-Termination of booking 1 week or later: 75% full freight less cost saved by Carrier due to termination of contract.
-Termination of booking 6 days or less: 100% full freight less cost saved by Carrier due to termination of contract.

EXHIBIT 1

- Clause 28 - Agents -
The Carrier's Agents are to be used at all ports of loading and discharge. The full style of the agents is to be advised by the Carriers on request.

- Clause 29 – Part Cargo/Deck Option –
The cargo loaded under this Booking Note is to be carried as part cargo, shipped on and/or under deck in the Carrier's option. Any cargo loaded on deck is at Merchants risk and responsibility without liability on the part of the vessel/Carriers for any expenses, delays, loss or damage however caused and even if caused by Carriers negligence or unseaworthiness of the vessel. In addition, Bills of Lading are always to be claused strictly in accordance with the Mates Receipts.

- Clause 30 – Cargo Discrepancy –
If there is a discrepancy between the Cargo as described by the Merchant, including shipping drawings provided by the Merchant, and the Cargo as tendered and the Merchant does not rectify such discrepancies within 24 hours of Carrier's notice, the Carrier shall have the option to sail the
vessel at any time thereafter and the Merchant shall be responsible for all costs arising therefrom including but not limited to detention and freight/dead freight as per Clause 10(g). Nothing herein shall be construed as imposing on the Carrier an obligation to load any cargo where there is a discrepancy with the Cargo as described by the Merchant.

For and on behalf of the Carriers – as Agents only                                                                                      Merchants

EXHIBIT 1