| Shipper (full style and address) | BIMCO LINER BILL OF LADING |
|---|---|
| THOMSON PIPE GROUP PRESSURE, INC.<br>1003 N. MCARTHUR BLVD<br>GRAND PRARIE TEXAS 75050 USA<br>PHONE: 909-434-1888 TAX NUMBER OF COMPANY: 94-3404882<br>MR. ALEX HEATON EMAIL: BOGOTA@COLFLETAR.COM.CO | **CODE NAME : "CONLINEBILL 2000"** <br>Amended January 1950; August 1952; January 1973;<br>July 1974; August 1976; January 1978; November 2000. |

| Consignee (full style and address) or Order | B/L No. | Reference No. |
|---|---|---|
| SERVICIOS MULTIMODALES DEL GOLFO, S.A DE C.V<br>SATURNO 105 PISO 2 COL. BARANDILLAS<br>TAMPICO, TAMPS CP. 89180<br>SMG-110121-GL6<br>CONTACTO. ANA LETICIA URRUTIA Analy.urrutia@grupogerez.com | KOSL151001 | |

| | Vessel |
|---|---|
| | NOMADIC MILDE V.2255 |

| Notify Party (full style and address) | Port of loading |
|---|---|
| SERVICIOS MULTIMODALES DEL GOLFO, S.A DE C.V<br>SATURNO 105 PISO 2 COL. BARANDILLAS<br>TAMPICO, TAMPS CP. 89180<br>SMG-110121-GL6<br>CONTACTO. ANA LETICIA URRUTIA Analy.urrutia@grupogerez.com | HOUSTON, TEXAS, USA |
| | Port of discharge |
| | ALTAMIRA, MEXICO   **COPY NON-NEGOTIABLE** |

**PARTICULARS DECLARED BY THE SHIPPER BUT NOT ACKNOWLEDGED BY THE CARRIER**

| Container No./Seal No./Marks and Numbers | Number and kind of packages; description of cargo | Gross weight, kg | Measurement, m3 |
|---|---|---|---|
| | 114 PKGS<br>GRP PIPES AND FITTINGS<br><br>I.E. 437584066 | 978,000.00 KGS | 5,241.97 CBM |

**SHIPPED** on board in apparent good order and condition (unless otherwise stated herein) the total number of Containers/Packages or Units indicated in the Box opposite entitled "Total number of Containers/Packages or Units received by the Carrier" and the cargo as specified above, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of discharge or so near thereunto as the vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the Port of discharge unto the lawful holder of the Bill of Lading, on payment of freight as indicated to the right plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant* expressly accepts and agrees to all its stipulations on both Page 1 and Page 2, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant. One original Bill of Lading must be surrendered duly endorsed in exchange for the cargo or delivery order, whereupon all other Bills of Lading to be void. IN WITNESS whereof the Carrier, Master or their Agent has signed the number of original Bills of Lading stated below right, all of this tenor and date.

| Total number of Containers/Packages or Units received by the Carrier |
|---|
| 114 |

| Shipper's declared value | Declared value charge |
|---|---|

Freight details and charges

| Carrier's name/principal place of business | Date shipped on board | Place and date of issue |
|---|---|---|
| KING OCEAN SERVICES LTD<br>13155 NW 19TH LANE<br>SWEETWATER, FLORIDA 33182<br>UNITED STATES | 11/9/22 | |
| | Number of original Bills of Lading | |
| | Pre-carriage by** | |

| Signature | Place of receipt by pre-carrier** |
|---|---|
| ................................ Carrier<br>or, for the Carrier<br><br>................................ as Master<br>( Master's name/signature )<br><br>................................ as Agents<br>( Agent's name/signature ) | Place of delivery by on-carrier** |

*As defined hereinafter (Cl. 1)
**Applicable only when pre-/on-carriage is arranged in accordance with Clause 8

EXHIBIT 2

# BIMCO LINER BILL OF LADING

Code Name: "CONLINEBILL 2000"

**Page 2**

**1. Definition.**
"Merchant" includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification.**
Any mention in this Bill of Lading of parties to be notified of the arrival of the cargo is solely for the information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**3. Liability for Carriage Between Port of Loading and Port of Discharge.**
(a) The International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924 ("the Hague Rules") as amended by the Protocol signed at Brussels on 23 February 1968 ("the Hague-Visby Rules") and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only regulate outbound shipments.
When there is no enactment of the Hague-Visby Rules in either the country of shipment or in the country of destination, the Hague-Visby Rules shall apply to this Contract save where the Hague Rules as enacted in the country of shipment or, if no such enactment is in place, the Hague Rules as enacted in the country of destination apply compulsorily to this Contract.
The Protocol signed at Brussels on 21 December 1979 ("the SDR Protocol 1979") shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract.
The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharging, or with respect to deck cargo and live animals.
(b) If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the cargo, the liability of the Carrier shall be limited to the freight for the carriage covered by this Bill of Lading, or to the limitation amount as determined in sub-clause 3(a), whichever is the lesser.
(c) The aggregate liability of the Carrier and/or any of his servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, the Additional Clause.

**4. Law and Jurisdiction.**
Disputes arising out of or in connection with this Bill of Lading shall be exclusively determined by the courts and in accordance with the law of the place where the Carrier has his principal place of business, as stated on Page 1, except as provided elsewhere herein.

**5. The Scope of Carriage.**
The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading, discharging, or other cargo operations and maintenance of Vessel and crew.

**6. Substitution of Vessel.**
The Carrier shall be at liberty to carry the cargo or part thereof to the Port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transhipment.**
The Carrier shall be at liberty to tranship, lighter, land and store the cargo either on shore or afloat and reship and forward the same to the Port of discharge.

**8. Liability for Pre- and On-Carriage.**
When the Carrier arranges pre-carriage of the cargo from a place other than the Vessel's Port of loading or on-carriage of the cargo to a place other than the Vessel's Port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the Port of loading and the Port of discharge even though the freight for the whole carriage has been collected by him.

**9. Loading and Discharging.**
(a) Loading and discharging of the cargo shall be arranged by the Carrier or his Agent.
(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.
(c) Loading and discharging may commence without prior notice.
(d) The Merchant or his Agent shall tender the cargo when the Vessel is ready to load and as fast as the Vessel can receive including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the Vessel is ready to load or fails to load as fast as the Vessel can receive the cargo, the Carrier shall be relieved of any obligation to load such cargo, the Vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for deadfreight and/or any overtime charges, losses, costs and expenses incurred by the Carrier.
(e) The Merchant or his Agent shall take delivery of the cargo as fast as the Vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to take delivery of the cargo the Carrier's discharging of the cargo shall be deemed fulfilment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction. If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge, the Merchant shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier.
(f) The Merchant shall accept his reasonable proportion of unidentified loose cargo.

**10. Freight, Charges, Costs, Expenses, Duties, Taxes and Fines.**
(a) Freight, whether paid or not, shall be considered as fully earned upon loading and non-returnable in any event. Unless otherwise specified, freight and/or charges under this Contract are payable by the Merchant to the Carrier on demand. Interest at Libor (or its successor) plus 2 per cent. shall run from fourteen days after the date when freight and charges are payable.
(b) The Merchant shall be liable for all costs and expenses of fumigation, gathering and sorting loose cargo and weighing onboard, repairing damage to and replacing packing due to excepted causes, and any extra handling of the cargo for any of the aforementioned reasons.
(c) The Merchant shall be liable for any dues, duties, taxes and charges which under any denomination may be levied, inter alia, on the basis of freight, weight of cargo or tonnage of the Vessel.
(d) The Merchant shall be liable for all fines, penalties, costs, expenses and losses which the Carrier, Vessel or cargo may incur through non-observance of Customs House and/or import or export regulations.
(e) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the cargo to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier shall have the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.

**11. Lien.**
The Carrier shall have a lien on all cargo for any amount due under this contract and the costs of recovering the same and shall be entitled to sell the cargo privately or by auction to satisfy any such claims.

**12. General Average and Salvage.**
General Average shall be adjusted, stated and settled in London according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo, whether carried on or under deck. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**13. Both-to-Blame Collision Clause.**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of the cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

**14. Government directions, War, Epidemics, Ice, Strikes, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the carriage under this contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the Vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the carriage would expose the Vessel or any cargo onboard to risk of seizure, damage or delay, in consequence of war, warlike operations, blockade, riots, civil commotions or piracy, or any person onboard to risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.
(c) Should it appear that epidemics; quarantine; ice; labour troubles, labour obstructions, strikes, lockouts (whether onboard or on shore); difficulties in loading or discharging would prevent the Vessel from leaving the Port of loading or reaching or entering the Port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.
(d) The discharge, under the provisions of this Clause, of any cargo shall be deemed due fulfilment of the contract of carriage.
(e) If in connection with the exercise of any liberty under this Clause any extra expenses are incurred they shall be paid by the Merchant in addition to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**15. Defences and Limits of Liability for the Carrier, Servants and Agents.**
(a) It is hereby expressly agreed that no servant or agent of the Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this contract of carriage, for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment.
(b) Without prejudice to the generality of the foregoing provisions in this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant and agent of the Carrier acting as aforesaid.
(c) The Merchant undertakes that no claim shall be made against any servant or agent of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.
(d) For the purpose of all the foregoing provisions of this Clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this Contract of carriage.

**16. Stowage.**
(a) The Carrier shall have the right to stow cargo by means of containers, trailers, transportable tanks, flats, pallets, or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**17. Shipper-Packed Containers, trailers, transportable tanks, flats and pallets.**
(a) If a container has not been filled, packed or stowed by the Carrier, the Carrier shall not be liable for any loss of or damage to its contents and the Merchant shall cover any loss or expense incurred by the Carrier, if such loss, damage or expense has been caused by:
(i) negligent filling, packing or stowing of the container;
(ii) the contents being unsuitable for carriage in container; or
(iii) the unsuitability or defective condition of the container unless the container has been supplied by the Carrier and the unsuitability or defective condition would not have been apparent upon reasonable inspection at or prior to the time when the container was filled, packed or stowed.
(b) The provisions of sub-clause (i) of this Clause also apply with respect to trailers, transportable tanks, flats and pallets which have not been filled, packed or stowed by the Carrier.
(c) The Carrier does not accept liability for damage due to the unsuitability or defective condition of reefer equipment or trailers supplied by the Merchant.

**18. Return of Containers.**
(a) Containers, pallets or similar articles of transport supplied by or on behalf of the Carrier shall be returned to the Carrier in the same order and condition as handed over to the Merchant, normal wear and tear excepted, with interiors clean and within the time prescribed in the Carrier's tariff or elsewhere.
(b) The Merchant shall be liable to the Carrier for any loss, damage to, or delay, including demurrage and detention incurred by or sustained to containers, pallets or similar articles of transport during the period between handing over to the Merchant and return to the Carrier.

**ADDITIONAL CLAUSE**
**U.S. Trade. Period of Responsibility.**
(i) In case the Contract evidenced by this Bill of Lading is subject to the Carriage of Goods by Sea Act of the United States of America, 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody.
(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in an amount exceeding USD 500 per package or customary freight unit.

This document is a computer generated CONLINEBILL 2000 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

EXHIBIT 2

| Shipper (full style and address) | BIMCO LINER BILL OF LADING<br>CODE NAME : "CONLINEBILL 2000"  |
|---|---|
| THOMSON PIPE GROUP PRESSURE, INC.<br>1003 N. MCARTHUR BLVD<br>GRAND PRARIE TEXAS 75050 USA<br>PHONE: 909-434-1888 TAX NUMBER OF COMPANY: 94-3404882<br>MR. ALEX HEATON EMAIL: BOGOTA@COLFLETAR.COM.CO | Amended January 1950; August 1952; January 1973;<br>July 1974; August 1976; January 1978; November 2000. |

| Consignee (full style and address) or Order | B/L No.<br>KOSL151002 | Reference No. |
|---|---|---|
| SERVICIOS MULTIMODALES DEL GOLFO, S.A DE C.V<br>SATURNO 105 PISO 2 COL. BARANDILLAS<br>TAMPICO, TAMPS CP. 89180<br>SMG-110121-GL6<br>CONTACTO. ANA LETICIA URRUTIA Analy.urrutia@grupogerez.com<br>AGENTE ADUANAL: ENRIQUE CESAR GEREZ FRAGA PATENTE 3377 | Vessel<br>NOMADIC MILDE V.2255 | |

| Notify Party (full style and address) | Port of loading<br>HOUSTON, TX USA |
|---|---|
| TRAMITES ADUANALES GEREZ, SC<br>SATURNO 105 PISO 3 COL. BARANDILLAS.<br>TAMPICO, TAMPS. CP 89180 TAG-940429-1P4<br>CONTACT: FRANCISCO DE LA SERNA MIER<br>Francisco.delaserna@grupogerez.com +52-833-106-9874<br>AGENTE ADUANAL: ENRIQUE CESAR GEREZ FRAGA<br>PATENTE 3377 | Port of discharge<br>ALTAMIRA, MEXICO<br><br>**COPY NON-NEGOTIABLE** |

**PARTICULARS DECLARED BY THE SHIPPER BUT NOT ACKNOWLEDGED BY THE CARRIER**

| Container No./Seal No./Marks and Numbers | Number and kind of packages; description of cargo | Gross weight, kg | Measurement, m3 |
|---|---|---|---|
| | 1 PACKAGE STC<br>WORK BOX<br>27 X 18 X 16 IN<br><br><br>CBM : 0.13<br>NOEEI: 30.37 (a).<br><br>FREIGHT PREPAID<br><br>FREIGHT ON BOARD | 2.000 LBS<br>0.907 KGS | 4.500 CFT<br>0.127 CBM |

SHIPPED on board in apparent good order and condition (unless otherwise stated herein) the total number of Containers/Packages or Units indicated in the Box opposite entitled "Total number of Containers/Packages or Units received by the Carrier" and the cargo as specified above, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of discharge or so near thereunto as the vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the Port of discharge unto the lawful holder of the Bill of Lading, on payment of freight as indicated to the right plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant* expressly accepts and agrees to all its stipulations on both Page 1 and Page 2, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant. One original Bill of Lading must be surrendered duly endorsed in exchange for the cargo or delivery order, whereupon all other Bills of Lading to be void. IN WITNESS whereof the Carrier, Master or their Agent has signed the number of original Bills of Lading stated below right, all of this tenor and date.

Total number of Containers/Packages or Units received by the Carrier
1

Shipper's declared value | Declared value charge

Freight details and charges

| Carrier's name/principal place of business | Date shipped on board<br>11/9/22 | Place and date of issue |
|---|---|---|
| KING OCEAN SERVICES LTD<br>11000 NW 29TH STREET SUITE 201<br>MIAMI, FLORIDA 33172<br>UNITED STATES | Number of original Bills of Lading | |
| | Pre-carriage by** | |

Signature

**KING OCEAN SERVICES LTD**
..................................................................... Carrier
or, for the Carrier

..................................................................... as Master
( Master's name/signature)

..................................................................... as Agents
( Agent's name/signature)

Place of receipt by pre-carrier**

Place of delivery by on-carrier**
**ALTAMIRA, MEXICO**

*As defined hereinafter (Cl. 1)
**Applicable only when pre-/on-carriage is arranged in accordance with Clause 8

EXHIBIT 2

# BIMCO LINER BILL OF LADING

Code Name: "CONLINEBILL 2000"

Page 2

**1. Definition.**
"Merchant" includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification.**
Any mention in this Bill of Lading of parties to be notified of the arrival of the cargo is solely for the information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**3. Liability for Carriage Between Port of Loading and Port of Discharge.**
(a) The International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924 ("the Hague Rules") as amended by the Protocol signed at Brussels on 23 February 1968 ("the Hague-Visby Rules") and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only regulate outbound shipments.
When there is no enactment of the Hague-Visby Rules in either the country of shipment or in the country of destination, the Hague-Visby Rules shall apply to this Contract save where the Hague Rules as enacted in the country of shipment or, if no such enactment is in place, the Hague Rules as enacted in the country of destination apply compulsorily to this Contract.
The Protocol signed at Brussels on 21 December 1979 ("the SDR Protocol 1979") shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract.
The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharging, or with respect to deck cargo and live animals.
(b) If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the cargo, the liability of the Carrier shall be limited to the freight for the carriage covered by this Bill of Lading, or to the limitation amount as determined in sub-clause 3(a), whichever is the lesser.
(c) The aggregate liability of the Carrier and/or any of his servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, the Additional Clause.

**4. Law and Jurisdiction.**
Disputes arising out of or in connection with this Bill of Lading shall be exclusively determined by the courts and in accordance with the law of the place where the Carrier has his principal place of business, as stated on Page 1, except as provided elsewhere herein.

**5. The Scope of Carriage.**
The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading, discharging, or other cargo operations and maintenance of Vessel and crew.

**6. Substitution of Vessel.**
The Carrier shall be at liberty to carry the cargo or part thereof to the Port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transhipment.**
The Carrier shall be at liberty to tranship, lighter, land and store the cargo either on shore or afloat and reship and forward the same to the Port of discharge.

**8. Liability for Pre- and On-Carriage.**
When the Carrier arranges pre-carriage of the cargo from a place other than the Vessel's Port of loading or on-carriage of the cargo to a place other than the Vessel's Port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the Port of loading and the Port of discharge even though the freight for the whole carriage has been collected by him.

**9. Loading and Discharging.**
(a) Loading and discharging of the cargo shall be arranged by the Carrier or his Agent.
(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.
(c) Loading and discharging may commence without prior notice.
(d) The Merchant or his Agent shall tender the cargo when the Vessel is ready to load and as fast as the Vessel can receive including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the Vessel is ready to load or fails to load as fast as the Vessel can receive the cargo, the Carrier shall be relieved of any obligation to load such cargo, the Vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for deadfreight and/or any overtime charges, losses, costs and expenses incurred by the Carrier.
(e) The Merchant or his Agent shall take delivery of the cargo as fast as the Vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to take delivery of the cargo the Carrier's discharging of the cargo shall be deemed fulfilment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction. If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge, the Merchant shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier.
(f) The Merchant shall accept his reasonable proportion of unidentified loose cargo.

**10. Freight, Charges, Costs, Expenses, Duties, Taxes and Fines.**
(a) Freight, whether paid or not, shall be considered as fully earned upon loading and non-returnable in any event. Unless otherwise specified, freight and/or charges under this Contract are payable by the Merchant to the Carrier on demand. Interest at Libor (or its successor) plus 2 per cent. shall run from fourteen days after the date when freight and charges are payable.
(b) The Merchant shall be liable for all costs and expenses of fumigation, gathering and sorting loose cargo and weighing onboard, repairing damage to and replacing packing due to excepted causes, and any extra handling of the cargo for any of the aforementioned reasons.
(c) The Merchant shall be liable for any dues, duties taxes and charges which under any denomination may be levied, inter alia, on the basis of freight, weight of cargo or tonnage of the Vessel.
(d) The Merchant shall be liable for all fines, penalties, costs, expenses and losses which the Carrier, Vessel or cargo may incur through non-observance of Customs House and/or import or export regulations.
(e) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the cargo to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier shall have the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.

**11. Lien.**
The Carrier shall have a lien on all cargo for any amount due under this contract and the costs of recovering the same and shall be entitled to sell the cargo privately or by auction to satisfy any such claims.

**12. General Average and Salvage.**
General Average shall be adjusted, stated and settled in London according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo, whether carried on or under deck. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**13. Both-to-Blame Collision Clause.**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of the cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

**14. Government directions, War, Epidemics, Ice, Strikes, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the carriage under this contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the Vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the carriage would expose the Vessel or any cargo onboard to risk of seizure, damage or delay, in consequence of war, warlike operations, blockade, riots, civil commotions or piracy, or any person onboard to risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.
(c) Should it appear that epidemics; quarantine; ice; labour troubles, labour obstructions, strikes, lockouts (whether onboard or on shore); difficulties in loading or discharging would prevent the Vessel from leaving the Port of loading or reaching or entering the Port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.
(d) The discharge, under the provisions of this Clause, of any cargo shall be deemed due fulfilment of the contract of carriage.
(e) If in connection with the exercise of any liberty under this Clause any extra expenses are incurred they shall be paid by the Merchant in addition to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**15. Defences and Limits of Liability for the Carrier, Servants and Agents.**
(a) It is hereby expressly agreed that no servant or agent of the Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this contract of carriage, for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment.
(b) Without prejudice to the generality of the foregoing provisions in this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant and agent of the Carrier acting as aforesaid.
(c) The Merchant undertakes that no claim shall be made against any servant or agent of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.
(d) For the purpose of all the foregoing provisions of this Clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this Contract of carriage.

**16. Stowage.**
(a) The Carrier shall have the right to stow cargo by means of containers, trailers, transportable tanks, flats, pallets, or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**17. Shipper-Packed Containers, trailers, transportable tanks, flats and pallets.**
(a) If a container has not been filled, packed or stowed by the Carrier, the Carrier shall not be liable for any loss of or damage to its contents and the Merchant shall cover any loss or expense incurred by the Carrier, if such loss, damage or expense has been caused by:
(i) negligent filling, packing or stowing of the container;
(ii) the contents being unsuitable for carriage in container; or
(iii) the unsuitability or defective condition of the container unless the container has been supplied by the Carrier and the unsuitability or defective condition would not have been apparent upon reasonable inspection at or prior to the time when the container was filled, packed or stowed.
(b) The provisions of sub-clause (i) of this Clause also apply with respect to trailers, transportable tanks, flats and pallets which have not been filled, packed or stowed by the Carrier.
(c) The Carrier does not accept liability for damage due to the unsuitability or defective condition of reefer equipment or trailers supplied by the Merchant.

**18. Return of Containers.**
(a) Containers, pallets or similar articles of transport supplied by or on behalf of the Carrier shall be returned to the Carrier in the same order and condition as handed over to the Merchant, normal wear and tear excepted, with interiors clean and within the time prescribed in the Carrier's tariff or elsewhere.
(b) The Merchant shall be liable to the Carrier for any loss, damage to, or delay, including demurrage and detention incurred by or sustained to containers, pallets or similar articles of transport during the period between handing over to the Merchant and return to the Carrier.

**ADDITIONAL CLAUSE**
**U.S. Trade. Period of Responsibility.**
(i) In case the Contract evidenced by this Bill of Lading is subject to the Carriage of Goods by Sea Act of the United States of America, 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody.
(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in an amount exceeding USD 500 per package or customary freight unit.

This document is a computer generated CONLINEBILL 2000 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

EXHIBIT 2